UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

COLEMAN MITCHELL, RENEE                    JURY TRIAL DEMANDED
    Plaintiff

v.

STATE OF CONNECTICUT,
DEPARTMENT OF PUBLIC HEALTH,
JOHN DOE 1-3
    Defendants

## COMPLAINT

**I.    PRELIMINARY STATEMENT**

1.    This is an action for equitable relief and damages as a result of Defendants's violations of the anti-discrimination and anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended, 42 U. S. C. §2000(e) *et. seq.*; Connecticut's Fair Employment Practices Act, C. G. S. §46(a)-51 *et seq.;* C. G. S. §46a-60 *et seq.*, for employment discrimination on the basis of race, and state tort claims.

**III    JURISDICTION AND VENUE**

2.    The jurisdiction of this court is founded upon 28 U. S. C. §1331 and 28 U. S. C. §1343. Venue is proper in the District of Connecticut pursuant to 28 U. S. C. § 1391(b) in that the claims arose in this district and Plaintiff resides in this district. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 28 U. S. C. §1367(a) because they are so related to the federal claims in this action that they form part of the same case or controversy.

## II.     THE PARTIES

3.     Plaintiff is Renee Coleman-Mitchell is an African American female.

4.     Defendant is the Connecticut Department of Public Health (hereafter referred to as "DPH").  John Doe 1-3 are also Defendants.

5.     Plaintiff was employed by Defendant for approximately one year in the position of Commissioner of Public Health for the State of Connecticut since April 1, 2019.

6.     Prior to becoming Commissioner Plaintiff had been employed at the Department of Public Health for some twenty (20) years in various leadership roles.

7.     Plaintiff has always performed her work, prior to and since becoming Commissioner, in an exemplary manner, never receiving any indication of failing or poor work performance.

8.     Beginning on or about January 2020 the State of Connecticut began receiving information regarding the highly contagious COVID19 virus.

9.     During the first week of March 2020, Plaintiff began to sound the alarm and communicated her concerns directly to Governor Ned Lamont, advising him that there was a need to move swiftly in the protection of nursing home residents, particularly the visitor restrictions, and testing staff of nursing home residents.

10.    Plaintiff's warnings were met with stiff opposition by Governor Lamont and his administration, and they refused to heed Plaintiff's advice.

11.     As the pandemic began to infiltrate the state and attention by the public and media began to become widespread, Plaintiff began to be subjected to systemic discrimination by Defendant, Governor Lamont, and his administration.

12.     Suddenly without cause, no forewarning, and no justifiable reason, Plaintiff was removed from all deliberations and policy strategy relative to all COVID19 planning.

13.     On February 27, 2020, for undisclosed reasons, without prior notice, Plaintiff was informed that Governor Lamont had appointed Josh Geballe, the State's Chief Operating Officer and Commissioner of Administrative Services, to lead the COVID19 command and response for COVID19 for Connecticut.

14.     Geballe is a Caucasian male who is substantially younger than Plaintiff.

15.     In order to hold the position of Commissioner of Public Health, C.G.S. Section 19a-1d, it is required that the person holding the position must be a physician or hold a master's degree in Public Health.

16.     Plaintiff has a master's degree in Public Health, as well as over thirty (30) years as a public health administrator and practitioner.

17.     Geballe is not a physician and does not hold a master's degree in Public Health. He held no knowledge, skill, ability, or experience to perform even remotely any of the job duties of Commissioner.  Plaintiff was made subordinate to Geballe.

18.     After his appointment Geballe usurped Plaintiff from performing the fundamental responsibilities of her position.  Plaintiff was completely left out of any briefings, meet-

ings, discussions, press conferences, or decision-making while Geballe performed her job duties.

19. On March 11, 2020, Geballe instructed Plaintiff to stay in-house and that Matt Carter, Caucasian male, was to be the face of DPH at news and press conferences. Geballe also instructed Plaintiff that this change should be made to appear as though it was Plaintiff's idea.

20. On March 24, 2020, Plaintiff held an executive management team conference call to discuss whether her executive team would be at a level one or level two status. As Commissioner of DPH this was Plaintiff's decision to make, however Geballe contacted her and informed her that her executive team would be at a level two.

21. On March 24, 2020, Geballe contacted Plaintiff and informed her that Michelle Gilman, Caucasian female, Deputy Commissioner of ICS, would be taking over all DPH surge preparation from Plaintiff.

22. Gilman is not a physician and does not hold a master's degree in Public Health.

23. During this same time Geballe began dismantling Plaintiff's team.  He took key COVID staff members from under Plaintiff's authority and re-assigned them to his team at ICS (Incident Command Level) stationed at the State Armory.

24. As a result of these actions, on March 25, 2020, Plaintiff filed a complaint with the Chief Operating Officer, Paul Mounds, regarding Geballe's continual undermining of her authority and position as Commissioner of DPH.

25. On April 9, 2020, Geballe informed Plaintiff that Barbara Cass, Caucasian female, Chief of Healthcare Quality, would thereafter be attending press conferences with Governor Lamont.

26. On May 11, 2020, Plaintiff was contacted by Geballe under the guise of a program meeting and notified her that the Governor was going in a different direction and that she was terminated from her position as Commissioner of DPH immediately.

27. Only days previously Lamont and Mounds had praised Plaintiff's work on mobile testing units and testing of nursing home residents.

28. On May 12, 2020, every newspaper in Connecticut reported Plaintiff's termination with malicious and false information citing an anonymous source in the Lamont administration purportedly speaking in confidence.

29. The New York Times, CNN and Rachel Maddow published that Plaintiff was terminated because she was too slow to act on the nursing home issue.

30. On May 13, 2020, in speaking with Governor Lamont, Plaintiff was advised that he thought they always got along well with each other and that she was a "class-act" and that her removal had nothing to do with job performance but that he had just decided to move in a different direction.

31. Governor Lamont's "different direction" was biased and discriminatory and simply on the basis that he did not prefer to have an older, African American female in the public eye as the individual leading the State in the fight against COVID-19.

32. Plaintiff was further subjected to differential treatment in that other comparator Caucasian employees (Mary Ann Schmitt-Carey and Av Harris) were provided with such things as progressive discipline, paid administrative leave, and notice of possible or pending termination of their employment. Plaintiff was not provided such courtesy.

33. Following her sudden and unjust termination, Governor Lamont asked, agreed, and advised Plaintiff that she would be compensated with one (1) year of severance benefits for her and her family and a letter of reference. He told Plaintiff that Paul Mounds would contact her to finalize those details and in the interim, he would try to seek out another position for her.

34. Since that date, Plaintiff was never offered nor considered for another position and was not provided with any sort of severance or any other consideration for her sudden and discriminatory termination of employment.

35. Plaintiff has applied to several job opportunities and the discussion of what was reported in the newspaper about her termination continues to come up. To date, Plaintiff is unemployed.

36. Plaintiff was also subjected to further discriminatory and defamatory actions wherein Governor Lamont has publicly insinuated failure by her as the Commissioner of Public Health to the disastrous response to the COVID-19 pandemic, especially that of the thousands of elderly nursing home illnesses and deaths that needlessly occurred as a result of Governor Lamont's failure to act in a timely manner.

37. Geballe and others took over Plaintiff's responsibilities, and none of those individuals who were in a position of responsibility for hundreds of deaths of elderly in Connecticut nursing homes were ever disciplined or terminated from their positions. These individuals that replaced Plaintiff were all her comparators, as they held her former position, her former salary, her former benefits, and her former work responsibilities.

38. On May 12, 2020, multiple news reporting agencies reported from anonymous sources, said to be a "state official", within the Governor's office as stating that Plaintiff was terminated from her position as Commissioner due in part to a series of missteps, including but not limited to her "being slow to act on a plan to protect nursing homes from the coronavirus." This statement was false and defamatory. The statement was then repeated by multiple other news agencies, including ABC Channel 7 News, CBS New York, AP News, Reuters, and Rachel Maddow.

39. On April 11, 2022, Plaintiff received a Release of Jurisdiction from the Commission on Human rights & Opportunities and a Right to Sue letter from the /equal Employment Opportunity Commission. Plaintiff has exhausted all administrative requirements in order to bring this federal court action.

**COUNT ONE:**     **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (RACE DISCRIMINATION)**

1-39. Paragraphs 1-39 are incorporated by reference and made paragraphs 1-39 of this Count One.

40. By the acts alleged in paragraphs 1-39 Defendant engaged in racially discriminatory treatment of Plaintiff.

41. Plaintiff has been damaged thereby.

**COUNT TWO:**     **CONNECTICUT GENERAL STATUTES SECTION 46A-60 (RACE DISCRIMINATION)**

1-39. Paragraphs 1-39 are incorporated by reference and made paragraphs 1-39 of this Count Two.

40. By the acts alleged in paragraphs 1-39 Defendant engaged in racially discriminatory treatment of Plaintiff.

41. Plaintiff has been damaged thereby.

**COUNT THREE:**     **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED (RETALIATION)**

1-39. Paragraphs 1-39 are incorporated by reference and made paragraphs 1-39 of this Count Three.

40. By the acts alleged in paragraphs 1-39 Defendant engaged in retaliatory treatment of Plaintiff.

41. Plaintiff has been damaged thereby.

**COUNT FOUR:**     **CONNECTICUT GENERAL STATUTES SECTION 46A-60 (RETALIATION)**

1-39.  Paragraphs 1-38 are incorporated by reference and made paragraphs 1-39 of this Count Four.

40.    By the acts alleged in paragraphs 1-39 Defendant engaged in retaliatory treatment of Plaintiff.

41.    Plaintiff has been damaged thereby.

**COUNT FIVE:**     **DEFAMATION**

1-39.  Paragraphs 1-39 are incorporated by reference and made paragraphs 1-39 of this Count Five.

40.    Defendant John Doe 1-3 published a writing in various news publication stating that Plaintiff was terminated from her position as Commissioner, at least in part because she was "slow to act on a plan to protect nursing homes from the coronavirus ".

41.    The writing identified the plaintiff, such that it was reasonably understood that it was about the plaintiff;

42.    The writing was false defamatory to the plaintiff; and

43.    Plaintiff has been damaged thereby.

9

**COUNT SIX:** **LIBEL PER QUOD**

1-39. Paragraphs 1-39 are incorporated by reference and made paragraphs 1-39 of this Count Six.

40. The communication by John Doe 1-3 became libelous because of other facts known by the recipient of the communication.

41. Plaintiff has been damaged thereby.

## PRAYER FOR RELIEF

Wherefore Plaintiffs claim the following:

1. Compensatory damages.

2. Costs incurred herein, including reasonable attorney's fees to the extent allowable by law; and attorney's fees pursuant to 42 U.S.C. Section 1988.

3. Such other relief as the Court deems just, fair, and equitable.


FOR THE PLAINTIFF

BY:/*s/ Cynthia R. Jennings*

Cynthia R. Jennings

55 Filley Street

Windsor, CT.  06095

Tel:(860) 883-6947